# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-CA-01488-SCT

*BOBBY LEON GIBSON*

*v.*

*WILLIAMS, WILLIAMS & MONTGOMERY, P.A.*
*AND JOSEPH H. MONTGOMERY*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/11/2014 |
| TRIAL JUDGE: | HON. HOLLIS McGEHEE |
| TRIAL COURT ATTORNEYS: | CHUCK McRAE |
| | SETH C. LITTLE |
| | JAMES G. WYLY, III |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | SETH C. LITTLE |
| | CHUCK McRAE |
| | CHRISTOPHER A. BAMBACH |
| ATTORNEYS FOR APPELLEES: | JAMES G. WYLY, III |
| | CHRISTINE MALISHKA BOCEK |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | REVERSED AND REMANDED - 03/10/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DICKINSON, P.J., LAMAR AND COLEMAN, JJ.**

**DICKINSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.    Bobby Leon Gibson ("Bobby") filed a legal-malpractice action against Joe Montgomery and his law firm, Williams, Williams and Montgomery, P.A. ("WWM"), alleging wrongful conduct in connection with the administration of his late wife's estate. The trial judge granted summary judgment to Montgomery and WWM. We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

¶2.    Our standard of review for an appeal of a summary judgment is *de novo*, and we review the facts in the record in the light most favorable to the nonmoving party,[1] who in this case is Bobby.  Accordingly, we set forth the following factual background in the light most favorable to Bobby, giving him the benefit of all inferences favorable to him.

¶3.    On March 29, 2009, a conservatorship was created for Bobby's wife, Deborah Miles Gibson ("Debbie").  The court appointed Debbie's brother, Michael Miles ("Michael"), as conservator.  In connection with the petition to appoint conservator, Bobby signed a document entitled "Waiver of Process and Joinder" in which Bobby agreed "that this action may be heard and disposed of without further notice to [me]."

¶4.    During the eighteen months that followed, Michael expended $238,371.41 of Debbie's funds, leaving a balance of just $4,036.40 in the conservatorship account. And in violation of a requirement contained in the Letters of Conservatorship, Michael failed to deliver an inventory of Debbie's estate within three months.[2]

¶5.    Debbie passed away on September 8, 2010.  Her Last Will and Testament named the following beneficiaries:  her husband Bobby, her son Miles Smith, Beth Ann McClendon, Elizabeth Minter, Bobby Leon Gibson III, and Michael Tidwell.  Under the terms of the will, Bobby was to receive three real estate properties, the remaining balance of two bank

---

[1] *See* **Burleson v. Lathem**, 968 So. 2d 930, 932 (Miss. 2007); ***Daniels v. GNB, Inc.***, 629 So. 2d 595, 599 (Miss. 1993).

[2] Michael actually never delivered an inventory of Debbie's estate during his time as conservator for Debbie.  He eventually did petition the court to approve a final accounting of the conservatorship on February 22, 2011.

accounts, and the life-insurance proceeds of a $400,000 policy.[3] Debbie also bequeathed

certain personal property pursuant to a handwritten list which was to be incorporated into the

will.[4]

¶6. Following Debbie's passing, Montgomery summoned Bobby and others to a meeting

at the offices of WWM to discuss Debbie's estate. At the meeting, Montgomery informed

Bobby that he was the only "interested party" who had not signed the combined probate

proceeding petition" and that, if he signed the combined petition, he would receive "big

money," but if he did not sign, the estate would sell certain guns which had sentimental value

to Bobby. Montgomery also informed Bobby that Debbie's estate lacked sufficient assets

to fund a $50,000 legacy to Bobby's grandson, and that Bobby should contribute $50,000 of

the proceeds he received as beneficiary of Debbie's $400,000 life-insurance policy. The

unpaid bequest to Bobby's grandson was the only one that had not already been satisfied.[5]

Further, Montgomery promised Bobby that, in exchange for contributing the $50,000 from

---

[3] The realty failed to pass under the will either because Bobby and Debbie owned the property as joint tenants, Bobby owned the land separately prior to their marriage, or it had been disposed of prior to Debbie's death. Bobby received nothing from the bank accounts because those accounts had been drained and closed prior to Debbie's death. And the life-insurance proceeds did not pass under the will because life-insurance proceeds go to the beneficiary named in the policy and are wholly independent from the estate.

[4] The handwritten list was not attached to any of the pleadings from the probate proceedings, and its contents are unknown to this Court.

[5] Debbie bequeathed $50,000 each to Beth Ann McClendon and Elizabeth Minter. Debbie also bequeathed $50,000 to Michael Tidwell. Miles agreed to pay and settle the bequests to McClendon and Minter. A separate life-insurance policy funded the $50,000 bequest to Tidwell and in fact resulted in Tidwell receiving $100,000 (because the policy amount was $100,000).

his life insurance proceeds, he would give Bobby the guns, which were valued at only $14,468.48, but had high sentimental value to Bobby.

¶7.     As a result of Montgomery's representations, Bobby signed the combined petition, which designated him as a "Petitioner." Montgomery signed the petition as an "Attorney[] for Petitioners." At the time he signed the petition, Bobby was not told that Debbie's estate had been significantly depleted by Michael's expenditures as conservator, and Montgomery did not inform him that, by signing the petition, he would be waiving his rights to contest and to renounce Debbie's will and receive a child's share of the estate.[6]

¶8.     Throughout the estate proceedings, Bobby did not challenge any distributions made pursuant to the will, the status of Debbie's estate, or the actions of the conservator, executor, or Montgomery. In fact, he joined and signed the "Inventory, First and Final Account by David Earl Miles, Petition to Pay Attorney's Fees and Costs, and Petition for Distribution, to Close Estate and Vest Title."

¶9.     On May 16, 2011, the chancellor entered an order approving, ratifying, and confirming this petition, specifically noting that it had been joined by Bobby. Then, almost a year later—on May 10, 2012—Bobby retained separate counsel and filed a "Petition to Re-Open Estate of Deborah Miles Gibson and Request for Other Relief." In this petition, Bobby made allegations of impropriety by Michael as conservator of Debbie's estate, wrongful conduct by David Miles as Executor of Debbie's estate, and fraudulent conduct by

---

[6] *See* Miss. Code Ann. § 91-5-25 (Rev. 2013).

4

Montgomery acting as Bobby's attorney. Service of process was not effected and no hearing was ever held to rule on the petition.[7]

¶10. On May 14, 2012, the chancellor entered a judgment finally closing Debbie's estate, but no language in the judgment mentioned or considered the merits of Bobby's petition to re-open. The next day, uninformed of this order, Bobby filed a complaint in the Circuit Court of Forrest County, asserting claims of legal malpractice against Christopher Howdeshell, attorney for the conservatorship; Pittman, Howdeshell, Hinton, and Hightower, PLLC; Joseph Montgomery; and WWM. Bobby also asserted claims for breach of fiduciary duty against these same defendants and additionally against Michael for his actions as conservator of Debbie's estate. After the case was transferred to the Chancery Court of Forrest County, Bobby voluntarily dismissed his claims against Michael, Howdeshell, and the Howdeshell firm, leaving only the legal-malpractice and fiduciary-duty claims against Montgomery and WWM.

¶11. Soon after dismissal of the other defendants, Montgomery and WWM filed a "Motion to Dismiss, or, alternatively, Motion for Summary Judgment," arguing 1) that Bobby's failure to comply with the thirty-day requirement in Section 11-1-39 required dismissal, 2) that the doctrines of *res judicata* and collateral estoppel barred Bobby's claims, 3) that judicial estoppel precluded Bobby's claims, and 4) that Bobby had failed to demonstrate that an attorney-client relationship existed between himself and Montgomery.

---

[7] Though a certificate of service was attached to the petition, the parties agree that no one was ever actually served the petition, and the record is in accordance with this belief.

¶12. Following a hearing, Special Judge Hollis McGehee informed the parties by e-mail that he intended to grant summary judgment and dismiss Bobby's claims, and he ordered Montgomery to submit a proposed order. Special Judge McGehee then issued an order that included the following language:

The Court . . . finds that neither party, and particularly Plaintiff Bobby Leon Gibson . . . , has been able to produce any argument or authority which would overcome what the Court finds to be a "glaring error" in Plaintiff's claim: the Plaintiff himself, with present counsel, intentionally elected to abandon the remedy that would have provided him with a review of the very issue about which he now seeks to complain. . . .The very issue Plaintiff complains about is one to which he agreed before the Chancery Court of For[r]est County. How, in a court of equity, can a competent person who has appeared (whether in person or by his/her pleading – a sworn representation to the Court) and consented to a particular relief and ruling later be heard to complain about his own agreement?

Notwithstanding Mr. Gibson's agreement to the relief about which he now complains, the Court affirmatively finds yet another undisputed fact that is outcome determinative: Mr. Gibson had pleadings pending before the Chancery Court of For[r]est County, Honorable Judge Gambrell, addressing the very issues about which he now complains and seeks recovery. But Mr. Gibson, through counsel, made the intentional decision to not pursue a claim that he not only could make but had made before this very Court. Counsel acknowledged in the hearing on May 22 that the Plaintiff made a conscious decision not to pursue his own claimed rights to pursue the remedy to which he was entitled to pursue. Plaintiff made a conscious decision, with the benefit of counsel who was clearly representing him, to abandon his rights in Chancery Court. Mr. Gibson, with advice of counsel, elected to forego his rights in Chancery Court to pursue a negligence claim in Circuit Court. He now, upon the transfer of the Circuit Court matter back to Chancery Court, seeks to complain that he did not get the relief to which he felt he was entitled. Yet, in this very proceeding, Mr. Gibson intentionally elected not to pursue his own allegations of a right to relief. Therefore, under all principles of equity and at law, Mr. Gibson's claim cannot withstand the test for summary judgment.

Further, even setting all that aside, there is an additional reason the Plaintiff's claim cannot survive WWM's Motion for Summary Judgment. Plaintiff has failed to make a showing sufficient to establish the existence of one (here more than one) of the three elements of malpractice – (1) an

6

attorney-client relationship – plaintiff fails here; (2) the attorney's negligence in handling the client's affairs – Plaintiff fails at this point because he failed at the first element; and (3) proximate cause of injury – here the Plaintiff fails again, completely. How can Plaintiff be allowed to come into this Court of equity complaining about his outcome in the estate matter when he first consented to the relief he obtained and second, when he had a perfect remedy or route to have his claim or concern addressed but he intentionally and pointedly abandoned that right and opportunity to pursue a negligence claim in Circuit Court? Respectfully, this is astounding to the Court. It is tantamount to and has the practical effect of abandoning his proper remedy in Chancery Court to address his complaint in order to shore up his negligence claim in Circuit Court. Such cannot be.

¶13. Bobby timely filed his Notice of Appeal and raises four issues: 1) whether the doctrines of *res judicata* or collateral estoppel bar Bobby's claims, 2) whether judicial estoppel precludes his malpractice action, 3) whether the thirty-day period provided in Section 11-1-39 requires dismissal, and 4) whether there remains a genuine issue of material fact as to the elements of his legal-malpractice and fiduciary-duty claims.

## STANDARD OF REVIEW

¶14. "When reviewing a trial court's grant or denial of a motion to dismiss or a motion for summary judgment, this Court applies a *de novo* standard of review,"[8] and summary judgment should be granted only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.[9] Further, this Court views the evidence in the light most favorable to the nonmoving party,[10] and "[t]he moving party has the burden of demonstrating that [no] genuine issue of material fact[s] exists, and the non-

---

[8] *Burleson v. Lathem*, 968 So. 2d 930, 932 (Miss. 2007).

[9] Miss. R. Civ. P. 56 (c).

[10] *Duckworth v. Warren*, 10 So. 3d 433, 436 (Miss. 2009).

moving party must be given the benefit of the doubt concerning the existence of a material fact."[11] Even where the facts are undisputed, "[s]ummary judgment is inappropriate where there are undisputed facts which are susceptible to more than one interpretation."[12]

## ANALYSIS

I.    **Whether—because the chancellor entered a judgment closing Debbie's estate after Bobby's Petition to Re-Open was filed—the doctrines of *res judicata* or collateral estoppel preclude Bobby's claims.**

¶15.    Montgomery and WWM assert that Bobby's claims are precluded by the doctrines of both *res judicata* and collateral estoppel, but we disagree.

*Res Judicata*

¶16.    The doctrine of *res judicata* is "fundamental to the equitable and efficient operation of the judiciary and 'reflects the refusal of the law to tolerate a multiplicity of litigation.'"[13] "The courts cannot revisit adjudicated claims and 'all grounds for, or defenses to recovery that were available to the parties in the first action, regardless of whether they were asserted or determined in the prior proceeding, are barred from re-litigation in a subsequent suit under the doctrine of *res judicata*.'"[14]

¶17.    Four identities must be present for *res judicata* to apply: (a) identity of the subject matter of the action; (2) identity of the cause of action; (3) identity of the parties to the cause

---

[11] ***One South, Inc. v. Hollowell***, 963 So. 2d 1156, 1160 (Miss. 2007).

[12] ***Johnson v. City of Cleveland***, 846 So. 2d 1031, 1036 (Miss. 2003).

[13] ***Carmichael***, 17 So. 3d 1087, 1090.

[14] ***Harrison v. Chandler-Sampson Ins., Inc.***, 891 So. 2d 224, 232 (Miss. 2005).

8

of action; and (4) identity of the quality or character of a person against whom the claim is made.[15] This Court also has held that there is to be a fifth requirement—that the prior judgment must be a final judgment on the merits.[16] The absence of any of these requirements "is fatal to the defense of *res judicata*."[17]

¶18. Montgomery and WWM argue that, because Bobby asserted a similar *factual* account in his Petition to Re-open Debbie's estate, *res judicata* precludes him from litigating his legal-malpractice action which is predicated on the same facts. Bobby indeed alleges almost identical facts in both his Petition to Re-open and his Complaint, and this Court reasonably could conclude that the two actions contain the same "identity of the subject matter of the action."

¶19. The "identity of the cause of action," however, is absent. In his Petition to Re-open, Bobby merely asked that the estate proceedings be reopened to further investigate alleged wrongful conduct and specifically requested relief through the creation of a constructive trust, injunctive relief, and an accounting of the conservatorship and estate. Importantly, within the petition to reopen, Bobby *did not* assert any legal-malpractice or fiduciary-duty claims. In other words, Bobby sought relief solely within the context of the estate. Conversely, in his legal-malpractice complaint, Bobby specifically alleged claims (including fiduciary-duty claims)—arguing duty, breach, and causation—against Montgomery and

---

[15] *EMC Mortg. Corp. v Carmichael*, 17 So. 3d 1087, 1090 (Miss. 2009).

[16] *Estate of White v. White*, 152 So. 3d 314, 317 (Miss. 2014).

[17] *Strait v. McPhail*, 145 So. 3d 696, 704 (Miss. Ct. App. 2013) (quoting *Channel v. Loyacono*, 954 So. 2d 415, 424 (Miss. 2007)).

9

WWM, and he requested relief in the form of damages—both actual and punitive. So, based on this, the "identity of the cause of action" is not present and, consequently, *res judicata* does not apply.

¶20. And even if this identity were present, *res judicata* cannot apply because the fifth identity—that the prior judgment must be a final judgment on the merits—is not present. The chancellor never adjudicated Bobby's Petition to Re-open the estate, nor did she mention it within her judgment or order closing Debbie's estate. No hearing on Bobby's petition was ever held, and the chancellor entered her order three days after Bobby filed his petition. Not only does the record lack any evidence that the chancellor actually considered and determined the merits of the petition, it contains no evidence demonstrating that the chancellor was even aware that the petition had been filed before entering her order. For these reasons, the chancellor's order closing the estate was not a "*final* judgment on the *merits*" of Bobby's malpractice claims.

*Collateral Estoppel*

¶21. The doctrine of collateral estoppel—often considered a cousin of *res judicata*—serves a "dual purpose" and "protects litigants from the burden of re-litigating an identical issue with the same party or his privy" and "promotes judicial economy by preventing needless litigation."[18] "Collateral estoppel is 'an unusual exception to the general rule that all fact questions should be litigated fully in each case.'"[19] Collateral estoppel precludes relitigating

---

[18] *Mayor and Bd. of Alderman, City of Ocean Springs, Miss. v. Homebuilders Ass'n of Miss., Inc.*, 932 So. 2d 44, 59 (Miss. 2006).

[19] *Marcum v. Miss. Valley Gas Co.*, 672 So. 2d 730, 733 (Miss. 1996).

a specific issue, which was: (1) actually litigated in the former action; (2) determined by the former action; and (3) essential to the judgment in the former action.[20]

¶22.    Unlike *res judicata*, collateral estoppel applies only to those issues actually litigated and not to those issues which merely could have been litigated in the prior suit.[21]  Further, "where there is room for suspicion regarding the reliability of those first fact-findings, collateral estoppel should never be applied."[22]   And this Court has held that both doctrines—*res judicata* and collateral estoppel—even if found to be permissible, "are not inflexible commands which must be brutally enforced in all cases"[23]

¶23.    Montgomery and WWM argue that collateral estoppel applies for the same reasons they argue that *res judicata* applies—the similar *factual* recitations contained in Bobby's petition and his complaint.   But, for similar reasons to those discussed concerning *res judicata*, we hold that collateral estoppel cannot apply.   Quite simply, all elements for collateral estoppel are absent. The chancellor's order fails to mention Bobby's petition at all. The chancellor held no hearing on the petition.   Indeed, she entered her order closing the estate only three days after Bobby filed his petition—which further indicates that she did not consider or determine the merits of the petition.   The  petition, therefore, was *not actually litigated* in the former action, was *not determined* by the former action, and consequently

---

[20] *In re Estate of Stutts v. Stutts*, 529 So. 2d 177, 179 (Miss. 1988).

[21] *Channel v. Loyacono*, 954 So. 2d 415, 424 (Miss. 2007).

[22] *Miss. Emp't Sec. Comm'n v. Philadelphia Mun. Separate Sch. Dist. of Neshoba Cty.*, 437 So. 2d 388, 396 (Miss. 1983).

[23] *State ex rel. Moore v. Molpus*, 578 So. 2d 624, 642 (Miss. 1991).

could not have been essential to the judgment. For these reasons, neither *res judicata* nor collateral estoppel precludes Bobby's claims.

> **II. Whether—because Bobby joined and signed a majority of the petitions during the estate proceeding—the doctrine of judicial estoppel precludes Bobby's claims.**

¶24. Montgomery and WWM next argue that judicial estoppel bars Bobby's claims. "Judicial estoppel is designed to protect the judicial system and applies where 'intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.'"[24] The doctrine arises "when one party asserts a position contrary to one taken in a prior litigation,"[25] and "precludes a party from asserting a position, benefitting from that position, and then, when it becomes more convenient or profitable, retreating from that position later in the litigation."[26]

¶25. This Court demands that three elements be met for judicial estoppel to apply: (1) the position must be clearly inconsistent with one taken during previous litigation; (2) the court must have accepted and relied on the previous position; and (3) the party must not have inadvertently taken the inconsistent position.[27] When the party asserting the prior inconsistent position has not *benefitted* by the assertion, the doctrine should not be applied.[28]

---

[24] *Kirk v. Pope*, 973 So. 2d 981, 991 (Miss. 2007).

[25] *Clark v. Neese*, 131 So. 3d 556, 560 (Miss. 2013).

[26] *In re Estate of Richardson*, 903 So. 2d 51, 56 (quoting *Dockins v. Allred*, 849 So. 2d 151, 155 (Miss. 2003)).

[27] *Kirk*, 973 So. 2d at 991 (Miss. 2007).

[28] *Mauck v. Columbus Hotel Co.*, 741 So. 2d 259, 265 (Miss. 1999).

¶26. Montgomery and WWM essentially argue that—because Bobby signed and joined the various petitions filed throughout the estate proceedings—he cannot now take a contrary position by alleging malpractice on the part of the attorneys in handling the estate. We agree with Montgomery and WWM that the first two elements of judicial estoppel are met. No one disputes that Bobby indeed signed and joined in most of the petitions filed concerning the conservatorship and estate proceedings. Further, the chancellor clearly accepted and relied on these positions, as evidenced by her orders stating "with joinder and approval of Bobby Leon Gibson."

¶27. But judicial estoppel applies only when the inconsistent position was not taken inadvertently. If Bobby's assertions prove to be true, and his claims later prove to be meritorious, then he signed the petitions either because he had received bad advice from his attorney, or because his attorney had breached a fiduciary duty to him by failing to fully inform him of the implications of signing the petitions.

¶28. For instance, Bobby alleges Montgomery should have informed him that he had a right to renounce the will and that, had he done so, Bobby would have received a larger share of the estate. Also, prior to signing, Montgomery failed to notify Bobby that Debbie's conservatorship account had been depleted by more than a quarter of a million dollars, to a mere $4,000. Bobby also alleges he agreed to contribute a portion of his life-insurance proceeds to the estate only because Montgomery persuaded him to do so by representing to him that failure to give up the proceeds would result in Bobby's loss of certain property that had sentimental value. Based on Bobby's allegations—which we must accept as true for

13

purposes of summary judgment—we hold that, at the very least, Bobby *inadvertently* took these inconsistent positions, thus precluding judicial estoppel.

¶29. Additionally, judicial estoppel cannot apply because it cannot be said that Bobby benefitted by taking these prior positions—in fact, quite the contrary. Bobby lost $50,000 in life-insurance proceeds due to Montgomery's representations and threat that the guns—which were worth far less than $50,000, and which had sentimental value to Bobby—would be sold. What is more, Bobby *actually received nothing* under the will. Debbie devised certain real property to Bobby but these failed to pass under the will.[29] And although Debbie purported to bequeath to Bobby funds in two bank accounts, those funds did not pass because those two accounts had been drained and closed prior to her death.

¶30. In fact, the only real "benefit" obtained by Bobby in signing these petitions was the acquisition of three guns, valued at only a little more than $14,000, for which he paid $50,000 in insurance proceeds. If the factfinder determines that an attorney-client relationship existed between Montgomery and Bobby, then Montgomery had a duty to advise Bobby of what was in his best interest, including the fact that he simply could have purchased the guns for $14,000 rather than giving up $50,000 in life-insurance proceeds that belonged only to him, separate and apart from the estate. Further, as discussed below, Bobby gave up his right to receive half of a substantial amount of property that passed under

---

[29] The realty failed to pass under the will because one of three things: 1) Bobby and Debbie owned the property as joint tenants with the rights of survivorship, 2) Bobby owned the land separately prior to their marriage, or 3) the property had been disposed of prior to Debbie's death.

Debbie's will to her son Miles Smith. For these reasons, judicial estoppel does not preclude Bobby's legal-malpractice action.

### III. Whether—because Bobby failed to refile his complaint with the Chancery Court of Forrest County after the case was transferred from the Circuit Court of Forrest County—Section 11-1-39 requires dismissal of Bobby's complaint.

¶31. Montgomery and WWM additionally contend that Section 11-1-39 mandates dismissal of Bobby's complaint, but their reliance on this statute is misplaced. Mississippi Code Section 11-1-39 provides that, after a case is transferred from one court to another, "the complainant or plaintiff shall file his declaration or bill in the court to which the cause was transferred within thirty days, unless the court, judge, or chancellor shall restrict the time or grant further time."[30]

¶32. Requirements for amending or refiling complaints are procedural matters that are governed by the Mississippi Rules of Civil Procedure,[31] which do not require a plaintiff to refile a complaint within thirty days after a case is transferred from circuit court to chancery court. Accordingly, this argument is without merit.

### IV. Whether Bobby has demonstrated the presence of a genuine issue of material fact regarding his legal-malpractice and fiduciary-duty claims.

¶33. Montgomery and WWM argue that Bobby failed to make out a *prima facie* legal-malpractice claim because he can demonstrate neither the existence of an attorney-client

---

[30] Miss. Code Ann. § 11-1-39 (Rev. 2014).

[31] *See **Wimley v. Reid**,* 991 So. 2d 135, 138 (Miss. 2008).

15

relationship nor causation. Montgomery and WWM further assert that Bobby has "failed to establish the existence of a fiduciary duty." We disagree with both assertions.

*A. Legal-Malpractice Claim*

¶34.    For legal-malpractice claims predicated on negligence, the plaintiff "must prove by a preponderance of the evidence: (a) the existence of an attorney-client relationship; (2) negligence on the part of the lawyer in handling the affairs of the client which have been entrusted to the lawyer; and (3) proximate cause of the injury."[32] But, importantly, for this type of claim, "an attorney-client relationship is an essential element," and the absence of such a relationship is fatal.[33]

1. Attorney-Client Relationship

¶35.    According to this Court, a relationship between a lawyer and client arises when:

> (1) a person manifests to a lawyer the person's intent that the lawyer provide legal services for the person; and either:
>
> (a)    the lawyer manifests to the person the consent to do so; or
>
> (b)    the lawyer fails to manifest lack of consent to do so, and the lawyer reasonably knows or should know that the person reasonably relies on the lawyer to prove services . . . .[34]

---

[32] ***Pierce v. Cook***, 992 So. 2d 612, 617 (Miss. 2008).

[33] ***Great American E & S Ins. Co. v. Quintairos, Prieto, Wood & Boyer, P.A.***, 100 So. 3d 420, 425 (Miss. 2012).

[34] ***Singleton v. Stegall***, 580 So. 2d 1242, 1244 n.2 (Miss. 1991) (citing American Law Institute, *Restatement of the Law: The Law Governing Lawyers* § 26 (Prelim. Draft No. 6, July 25, 1990)) (emphasis added).

¶36. Bobby argues—and we agree—that a genuine issue of material fact remains as to the existence of an attorney-client relationship between himself and Montgomery. Bobby points to the combined petition entitled "Notification of Death of Deborah Miles Gibson; Petition for Probate of Last Will and Testament of Deborah Miles Gibson; and Petition to Convert Conservatorship into Estate Proceeding, to Appoint David Earl Miles as Executor, and to Allow Reasonable Time for the Filing of Final Accounting by Michael L. Miles, Conservator herein," in which Bobby signed as a "Petitioner" and Montgomery signed as an "Attorney for Petitioner[s]." At oral argument, counsel for Montgomery argued that this designation was a scrivener's error. Perhaps it was, but that is a decision to be made by the factfinder.

¶37. Bobby also argues that the meeting held at the office of WWM further evidences an attorney-client relationship because, at this meeting, Montgomery advised him—as an attorney—to sign the petition and to deduct $50,000 from his life-insurance proceeds to satisfy a bequest in Debbie's will.

¶38. In *Edmonds v. Williamson*, the plaintiff pursued claims for legal malpractice and breach of fiduciary duty against defendants.[35] In reviewing the trial court's decision that the plaintiff could not establish a legal-malpractice claim against the defendants, this Court considered whether the plaintiff had demonstrated the existence of an attorney-client relationship and held that an attorney-client relationship did exist between the parties because

---

[35] *Edmonds v. Williamson*, 13 So. 3d 1283, 1289 (Miss. 2009).

17

the defendant—in his response to the plaintiff's complaint—admitted to the existence of an attorney-client relationship.[36]

¶39.    The facts presented here—in the context of summary judgment, which requires us to view the facts in the light most favorable to the nonmoving party—can be compared to those presented in **Edmonds**, in which the defendant admitted to an attorney-client relationship with the plaintiff.  Here, by signing the petition as an "attorney for the petitioner" in a pleading to the court that listed Bobby as a "petitioner," Montgomery not only represented to Bobby that he was his attorney, but he made that same representation to the court.  For purposes of summary judgment, this certainly should rise to the level of an admission.

¶40.    Rule 11 of the Mississippi Rules of Civil Procedure also supports Bobby's argument. Rule 11 states "the signature of an attorney constitutes a certificate that the attorney has read the pleading or motion; that to the best of the attorney's knowledge, information, and belief there is good ground to support it . . . ."[37]  So, in accordance with this rule, when Montgomery signed the petition as "attorney for petitioner," he certified to the court that this representation was true and accurate.

¶41.    We note that the following concerns expressed by the Special Judge during the hearing on WWM's and Montgomery's motion to dismiss and/or summary judgment shed further light on this issue:

> I mean, I don't know, I mean, here's my concern about your Motion as the posture that the case is in this morning, is that it appears that at a point in time

[36] **Id.**

[37] Miss. R. Civ. P. 11(a).

18

when your clients, as well as the Howdeshell group, filed that Petition, that this gentleman [Bobby] had no other – well, I don't know if he had any other counsel or not. But they represented themselves as being his counsel and he signed off on that. And there wasn't a hearing. And it appears that he waived his right of renunciation and other, maybe other significant rights, without having appeared before the Chancellor, at least as I understand it. And that's my concern in an nutshell in terms of the crux of your [M]otion this morning.

¶42.     So, because this Court reviews a motion for summary judgment *de novo*, and because this Court must view the evidence in the light most favorable to the nonmoving party, we must hold that there remains a genuine issue of material fact concerning the existence of an attorney-client relationship.

    2. Negligence

¶43.     Because we hold that a genuine issue of fact remains as to the existence of an attorney-client relationship, we now address the remaining elements for a legal-malpractice claim, the second of which is that the plaintiff must prove by a preponderance of the evidence "negligence on the part of the lawyer in handling the affairs entrusted to him."[38]  Lawyers owe their clients the duties of loyalty and care.[39]

¶44.     Montgomery allegedly advised Bobby to sign a petition which effectively waived important rights—including the rights to renounce and contest Debbie's will—without first informing him of the consequences of such actions.  Further, Montgomery allegedly instructed Bobby that if he signed the combined petition, he would receive "big money," but that if he did not sign, the estate would sell certain guns which had sentimental value to

---

[38] *Century 21 Deep South Props., Ltd. v. Corson*, 612 So. 2d 359, 372 (Miss. 1992).

[39] *Pierce v. Cook*, 992 So. 2d 612, 617 (Miss. 2008).

19

Bobby. And Montgomery allegedly encouraged Bobby to deduct $50,000 from life-insurance proceeds to fund a bequest to his grandson when every other bequest in the will was funded and settled by Miles Smith—Debbie's son. Based on these allegations, a genuine issue of material fact exists as to whether Montgomery breached the duties of loyalty and care owed by him to Bobby.

### 3. Proximate Cause and Injury

¶45. Finally, we address the third and fourth elements of a legal-malpractice claim—proximate cause and injury.[40] In a negligence-based malpractice action, the plaintiff "must establish proximate cause by the so-called 'trial-within-a-trial' test," and "'must show that, but for [his] attorney's negligence, he would have been successful in the prosecution or defense of the underlying action.'"[41]

¶46. Montgomery and WWM argue that Bobby cannot show causation "because [he] solely caused his own alleged damages," but we disagree. Due to Montgomery's alleged wrongful actions, Bobby suffered a fairly substantial injury.

¶47. First, had Montgomery not induced Bobby to sign the petition in which Bobby unknowingly waived his rights to renounce and contest Debbie's will, Bobby could have renounced Debbie's will, resulting in a substantially larger inheritance from his late wife's estate. In particular, had he renounced Debbie's will, Bobby would have received "such part of [Debbie's] estate, real and personal, as [he] would have been entitled to if [Debbie] had

---

[40] *Edmonds*, 13 So. 3d at 1290.

[41] *Crist v. Loyacono*, 65 So. 3d 837, 842 (Miss. 2011).

died intestate, except that, even if [Debbie] left no children or descendant of such, [Bobby], upon renouncing, shall be entitled to [] one-half (½) of the real and personal estate of [Debbie]."[42]  Pursuant to Debbie's will, Miles Smith inherited:

> All of [her] stock in Joe N. Miles & Sons, Inc.; the County Line Grocery with all inventory and contents, as well as the approximately five (5) acres of real estate in Forrest County, Mississippi, upon which it is situated; all of [her] real property owned in Forrest County, Mississippi; all of [her] interest in the Lodge Mahal in Pearl River County, Mississippi; all of [her] real property owned in Forrest County and Lawrence County, Mississippi; any and all other real estate owned by me in the State of Mississippi not hereinabove devised to someone else, as well as my trust fund at BancorpSouth, Hattiesburg, Mississippi, and any all personal property owned by me at the time of my death not listed in the handwritten list of personal property referred to in Paragraph X below.

¶48.    Pursuant to Section 91-5-25, had Bobby chosen to renounce Debbie's will, he would have received a portion of the above-mentioned property.  So, but for Montgomery's alleged wrongful conduct—by advising Bobby to sign the combined petition renouncing important rights without first explaining the consequences of such an action—Bobby could have, and likely would have, chosen to renounce Debbie's will and consequently would have received a much larger inheritance.

¶49.    Further, but for Montgomery's actions—according to Bobby's allegations—of encouraging, or coercing, Bobby to deduct $50,000 from the life-insurance proceeds to fund a bequest in Debbie's will—Bobby would have received $50,000 more than he did.  For these reasons, Bobby has established—at the very least—a genuine issue of material fact as to the elements of "causation" and "injury."

---

[42] Miss. Code Ann. § 91-5-25 (Rev. 2013).

*B. Fiduciary-Duty Claim*

¶50.    It is axiomatic that "a fiduciary duty must exist before a breach of the duty can occur."[43]  Attorney-client relationships give rise to fiduciary duties as evidenced by this Court's recognition of legal-malpractice claims based on fiduciary obligations.[44]  And as discussed earlier, we hold that a genuine issue of material fact remains on the issue of whether such a relationship existed between Montgomery and Bobby.

¶51.    But the absence of an attorney-client relationship does not foreclose the possibility of the existence of a fiduciary relationship.  In Mississippi, "[a] fiduciary relationship may arise in a legal, moral, domestic, or personal context, where there appears 'on the one side an overmastering influence or, on the other, weakness, *dependence, or trust,* justifiably reposed.'"[45] So fiduciaries' duties may arise as a matter of law from certain specified relationships such as attorney and client; or they may be created by the facts and circumstances of a particular relationship, taking into account the above factors.

¶52.    In **Baker Donelson**, we recognized that, for decades, this Court has held that fiduciary relationships can arise in a variety of contexts, and that relationships between attorneys and third parties can give rise to a fiduciary relationship—and the requisite

---

[43] **Baker Donelson Bearman Caldwell & Berkowitz, P.C. v. Seay**, 42 So. 3d 474, 485 (Miss. 2010) (citing Black's Law Dictionary 564 (5th ed. 1979)).

[44] *See* **Crist v. Loyacono**, 65 So. 3d 837, 842 (Miss. 2011).

[45] **Id.** (citing **Milner v. Bertasi**, 530 So. 2d 168, 170 (Miss. 1988); **Matter of Estate of Haney**, 516 So. 2d 1359 (Miss. 1987)) (emphasis added).

22

fiduciary duties—despite the absence of an actual "attorney-client" relationship.[46]

Accordingly, the general rule in Mississippi is that, under certain facts and circumstances, attorneys can acquire fiduciary obligations to third parties who are not their clients where no attorney-client relationship is present.[47] Fiduciary relationships often turn on questions of fact related to exertion of influence, whether a party trusted and relied on another party, and whether the reliance was justified.

¶53.   In other words, while it is true that we have never held—and we do not hold today—that attorneys for estates always owe fiduciary duties to every estate beneficiary, we see no reason to carve out a rule of special protection for estate attorneys, exempting them from any beneficiary claim of a fiduciary relationship. An attorney for the estate may, under certain circumstances, owe fiduciary duties to a beneficiary of the estate based on the same considerations relevant to determine fiduciary duties to all third parties. The existence of these fiduciary relationships are questions to be determined in the trial court, and here, we believe sufficient evidence exists in the record for a factfinder to conclude that Montgomery owed Bobby fiduciary duties, even without a finding of an attorney-client relationship.

¶54.   And, should the trial court find that Montgomery assumed fiduciary duties to Bobby, we also find that—viewing the facts and allegations in the light most favorable to Bobby—Montgomery allegedly induced Bobby into signing a petition without first informing him of the consequences. This, in effect, caused Bobby to waive his statutory rights to

---

[46] ***Baker Donelson***, 42 So. 3d 474, 485 (Miss. 2010).

[47] ***Id.***

contest and renounce Debbie's will. Montgomery approached Bobby under circumstances which, if not enough to create an attorney-client relationship, could support an inference of dependence and trust, as Montgomery purported to have Bobby's interests in mind and to exercise control over Debbie's estate. There is evidence in the record to support Bobby's claim that Montgomery coerced or compelled him to deduct $50,000 of life-insurance proceeds to fund a bequest in Debbie's will. These acts, if true—and assuming a fiduciary relationship is found to have existed—would constitute a breach of that fiduciary duty. So genuine issues of material fact remain regarding Bobby's fiduciary-duty claims.

¶55. To be clear, we do not address today the duties of attorneys who represent executors and administrators of estates. Montgomery claims he was the attorney for the estate and not for the executor of the estate. In thirty filings with the trial court, Montgomery was either listed as or signed as the "attorney for the Estate." Indeed, we are unable to locate a single filing in which Montgomery identifies himself as, or claims to be, an attorney for the executor. Additionally, Montgomery is identified as attorney for the estate within the trial transcript and the appellee's brief. And finally we note that, within the first five minutes at oral argument, Montgomery's own counsel unequivocally stated that nothing in the record indicates anything other than that Montgomery and his law firm acted as attorneys for the Estate.

**CONCLUSION**

¶56. In sum, Bobby's legal-malpractice action is not precluded by the doctrines of *res judicata*, collateral estoppel, or judicial estoppel. Furthermore, Section 11-1-39 does not

24

apply to require dismissal of Bobby's claims. And finally, we hold that Bobby has demonstrated that genuine issues of material fact exist regarding the elements of his legal-malpractice and fiduciary-duty claims.

¶57. We make no determination as to the underlying merits of Bobby's claims, as the only issue before this Court is whether Bobby has demonstrated the existence of genuine issues of material fact, so that the trial court's grant of summary judgment was improper. We hold that he has. Accordingly, we reverse the trial court's grant of summary judgment and remand this case to the Chancery Court of Forrest County for further proceedings consistent with this opinion.

¶58. **REVERSED AND REMANDED.**

**WALLER, C.J., LAMAR, KITCHENS, KING, COLEMAN AND MAXWELL, JJ., CONCUR. RANDOLPH, P.J., AND BEAM, J., NOT PARTICIPATING.**