# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CP-00515-COA

**NATHANIEL WALDEN A/K/A NATHANIEL "DUDE" WALDEN**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                                          **APPELLEE**

DATE OF JUDGMENT:                 04/03/2017
TRIAL JUDGE:                              HON. JANNIE M. LEWIS
COURT FROM WHICH APPEALED:  HOLMES COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:     NATHANIEL WALDEN (PRO SE)
ATTORNEYS FOR APPELLEE:       OFFICE OF THE ATTORNEY GENERAL
                                              BY: LAURA HOGAN TEDDER
NATURE OF THE CASE:              CIVIL - POSTCONVICTION RELIEF
DISPOSITION:                         AFFIRMED - 09/25/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE LEE, C.J., FAIR AND WILSON, JJ.

### LEE, C.J., FOR THE COURT:

¶1.     Following an evidentiary hearing on Nathaniel Walden's motion for postconviction relief (PCR) in which he asserted ineffective assistance of counsel, the Holmes County Circuit Court denied Walden's motion on the merits. Walden now appeals. Finding no error, we affirm.

¶2.     The present appeal comes before this Court following an evidentiary hearing in the circuit court on Walden's ineffective-assistance claim. This hearing took place following the supreme court's decision in *Walden v. State*, 201 So. 3d 1042 (Miss. 2016), reversing the circuit court's decision to dismiss Walden's initial PCR motion and this Court's decision to

affirm the circuit court in *Walden v. State*, 213 So. 3d 547 (Miss. Ct. App. 2016), *rev'd*, 201 So. 3d 1042 (Miss. 2016). Thus, the facts and circumstances giving rise to this appeal are the same as those in his previous PCR appeals, as well as Walden's direct appeal in *Walden v. State*, 29 So. 3d 17 (Miss. Ct. App. 2008). Walden's present ineffective-assistance claims are largely based on this Court's discussion and disposition of issues raised in his direct appeal. As such, it is necessary to detail not only the facts and procedural history underlying Walden's present appeal but also his previous PCR-motion appeals and direct appeal.

## FACTS

¶3. On April 28, 2005, Walden shot and killed his sister-in-law, Mary Walden, who was married to Walden's brother, James. Walden and James had been arguing over the course of a couple weeks regarding items James's son had purportedly taken and not returned. On the day of the shooting, Walden went to James's property in Holmes County, Mississippi, to confront him about a missing saw. The two became involved in a heated exchange. According to James, Walden would not leave his property, so he pointed an unloaded shotgun at Walden so that he would leave. Walden left and went to his sister, Maddie Brown's house, but after about twenty minutes he returned to James's trailer house. The two exchanged gunshots. Brown later provided a statement to the sheriff's office and also testified at trial that Walden was angry when he left her house and stated that he was going to kill James. Both James and Walden gave conflicting accounts regarding the shooting, and each testified at trial that the other began shooting first. Once Walden left James's property,

2

James discovered that Mary was dead, lying in a pool of blood in the doorway between the master bedroom and the bathroom. Mary's autopsy revealed she had died from a single bullet to the head, and the Mississippi Crime Laboratory determined that this bullet came from Walden's pistol he had on his person at the time of his arrest. Walden testified at trial that he did not know at the time he left James's property that he had shot Mary who was in the house.

¶4. Following a jury trial in the Holmes County Circuit Court, Walden was convicted of murder and shooting into an occupied dwelling. For the murder conviction, Walden was sentenced to life in the custody of the Mississippi Department of Corrections (MDOC). For shooting into an occupied dwelling, he was sentenced to ten years in the custody of the MDOC, with five years suspended and on probation, with the sentence to run consecutively to the life sentence. Additional facts are discussed as relevant in the course of the procedural history and analysis.

**PROCEDURAL HISTORY**

*1. Direct Appeal*

¶5. Walden directly appealed his conviction and sentence to this Court in *Walden v. State*, 29 So. 3d 17 (Miss. Ct. App. 2008). One of his claims on direct appeal was that "the trial court erroneously refused Walden's proffered jury instruction D-2." *Id*. at 19 (¶2). Jury instruction D-2 (the accident instruction) would have "instructed the jury to find Walden not guilty if it found that Walden, without design or deliberation to cause death, possessed a

3

pistol and 'in the heat of passion in a struggle between James Walden and Nathaniel Walden the fatal shot was fired accidentally and through misfortune, upon any sudden and sufficient provocation.'" *Id*. at 23 (¶20). Walden argued on direct appeal that the trial court's refusal of the accident instruction prevented him from presenting his theory of the case to the jury. *Id*. Walden had testified at trial "that he was running away and shooting into the air, so he did not know how many rounds he had fired into the trailer house . . . [and] maintained throughout his testimony that he never intended to kill anyone." *Id*. at 21 (¶11). This Court explained that "[w]hile a defendant is entitled to a jury instruction that presents his theory of the case, this entitlement is limited by the court's ability to refuse a defense instruction that incorrectly states the law or lacks a foundation in the evidence." *Id*. at 23 (¶21) (citing *Howell v. State*, 860 So. 2d 704, 745 (¶142) (Miss. 2003)). We then held that "jury instruction D-2 lacked an evidentiary foundation, and the trial court correctly denied it" because the accident instruction would have been warranted only if there had been evidence that Walden accidentally fired the gun. *Id*. (citing *Montana v. State*, 822 So. 2d 954, 962-63 (¶¶33-34) (Miss. 2002)). But, "Walden's theory of the case was based upon his own testimony that he intentionally fired each shot. There was no evidence from which a jury could have found that Walden fired the shots accidentally." *Id*. at 24 (¶22). This Court affirmed the trial court's denial of the accident instruction.

¶6.     Also in his direct appeal, Walden alleged there was insufficient evidence to support his murder conviction because there was "no evidence that he fired the gun with deliberate

4

design to effect death." *Id*. at 25 (¶25). But this Court found that there was sufficient evidence to support Walden's murder conviction, particularly Brown's testimony that Walden stated he was going to kill James just before returning to James's property when the shooting occurred. *Id*. We also noted there was testimony that Walden shot at James first and that James retreated into the trailer house and Walden shot into the trailer. *Id*. We then explained that Walden's intent to kill James was transferred to Mary under the doctrine of transferred intent, so there was sufficient evidence of intent to support his murder conviction. *Id*. at (¶26).

### 2. Initial PCR Motion

¶7. On June 20, 2013, the supreme court granted Walden leave to proceed in the circuit court, and Walden filed his PCR motion on July 12, 2013. Walden's PCR motion asserted a claim for ineffective assistance of counsel, alleging that his counsel was constitutionally deficient for advising him to reject a manslaughter plea deal and that his counsel told him that the State would not be able to prove at trial that Walden intentionally murdered Mary. He further alleged that his counsel was ineffective for presenting an accident defense when there was evidence that Walden had intentionally fired the shots. The circuit court found that Walden's petition was procedurally barred because Walden failed to seek leave from the supreme court to proceed and that the petition was time-barred. As to the merits, the circuit court found that Walden's petition should be denied because the evidence at trial supported his murder conviction. The circuit court also found that Walden's claims were supported

5

only by his own affidavits, thereby warranting dismissal.

¶8. Walden appealed the circuit court's dismissal of his PCR motion to this Court in *Walden v. State*, 213 So. 3d 547 (Miss. Ct. App. 2016), *rev'd*, 201 So. 3d 1042 (Miss. 2016). We found that the motion was not procedurally barred because Walden had sought leave to proceed in the circuit court, which the supreme court had granted. 213 So. 3d at 549-50 (¶10). We also found that Walden's motion was not time-barred, noting that "Walden filed his motion seeking leave before the three-year statute of limitations expired, but it was not granted until after the three-year deadline had passed, [so] we must presume that the supreme court intended to allow Walden to file his motion without subjecting it to the three-year statute of limitations." *Id*. at 550 (¶13).

¶9. Though finding Walden's claim was procedurally alive and not time-barred, we found that the circuit court did not err in dismissing the claim on the merits, noting that "where a party offers only his affidavit, then his ineffective assistance claim is without merit." *Id*. at 550 (¶15) (quoting *Cherry v. State*, 24 So. 3d 1048, 1051 (¶6) (Miss. Ct. App. 2010)). Affirming the circuit court's dismissal, we held that "because Walden fails to present any evidence that he was offered a plea deal for manslaughter, he has no grounds to support his claim of ineffective assistance of counsel." *Id*. Walden appealed, and the supreme court granted his petition for certiorari.

¶10. In *Walden v. State*, 201 So. 3d 1042, 1044 (¶9) (Miss. 2016), the supreme court found that this Court had "accurately addressed . . . that the circuit judge erred by finding that

Walden had failed to seek leave and had filed outside the three-year statute of limitations." The supreme court then "consider[ed] whether Walden's claim should have survived summary dismissal on the merits." *Id*. The supreme court noted that the circuit court dismissed Walden's claim on the merits for two reasons. "First, the circuit judge found that Walden could not prove prejudice because the evidence at trial supported his conviction for murder. This conclusion was error." *Id*. at (¶10). The supreme court found that the "circuit judge erred by focusing her prejudice analysis on the evidence of guilt at trial," rather than whether "the outcome of the plea process would have been different with competent advice." *Id*. at (¶11) (citing *Lafler v. Cooper*, 566 U.S. 156, 163 (2012)).

¶11.    As to the second reason the circuit court dismissed Walden's claim (because it was supported only by his own affidavit), the supreme court stated that "the petitioner's obligation to support his application with affidavits other than his own is not absolute. That obligation may be excused by a showing that the petitioner has good cause for failing to obtain those affidavits." *Id*. at 1045 (¶¶12, 14). The supreme court noted that Walden had "asserted potential good cause for his failure to provide additional affidavits—which the circuit judge failed to consider . . . ." *Id*. at 1045 (¶15). Ultimately, the supreme court reversed the circuit court's dismissal, as well as this Court's decision affirming the circuit court, and remanded to the circuit court "for proceedings consistent with [the] opinion." *Id.* at (¶16).

     3.     *PCR Evidentiary Hearing on Remand*

¶12. On remand in the circuit court, the circuit judge held an evidentiary hearing based on Walden's ineffective-assistance claim.

¶13. At the PCR evidentiary hearing, Walden set out to show that the State "made a plea offer to Mr. Walden that if he were to plead guilty to the offense of manslaughter, the State would recommend [twenty] years to serve in the Department of Corrections as well [as] dismiss the shooting into a dwelling charge." In addition to testifying himself, Walden called as witnesses James Powell, one of the prosecutors on Walden's trial; Jimmy Hull, Walden's appointed defense counsel; and James, Walden's brother.

### A. Powell's Testimony

¶14. Powell testified that he was the district attorney for the 21st judicial district at the time of Walden's trial and that he was the lead prosecutor on Walden's case. Powell stated that he did not specifically recall making Walden a plea offer, testifying: "I do not remember whether I did or not. I just don't know." Powell also testified that usually the judge would order a deadline by which plea offers must be made, and Powell would have a "master sheet" and specific, individual offer sheets for each client's attorney. He testified that normally he would have kept the offer sheets, but in Walden's case file there was no master sheet or specific offer sheets evidencing that any offer had been made. Powell concluded his testimony at the hearing by stating "I can't testify truthfully one way or the other, whether we made an offer or not."

### B. Hull's Testimony

¶15. Walden's trial counsel, Hull, also testified at the PCR evidentiary hearing. Hull stated that he was employed as the public defender for Holmes County when he represented Walden at trial. Hull recalled that the first time he met Walden, Walden "walked in my office, [and] he told me that if I thought he was going to plead guilty I was crazy." When asked if he received a plea offer for Walden's case, Hull answered, "I don't remember specifically, but if I got one my habit would have been to tell him about it and let him make the decision." Hull testified that he believed from the start of the case that it was a manslaughter case and not a murder case. He said that if he had received an offer for ten years to serve or even twenty years to serve for a manslaughter plea, he would have advised Walden to take the plea. Hull stated that "[i]f there was a plea offered, it was turned down." Hull also stated at the hearing that he advised Walden not to testify, but Walden went against his advice and took the stand.

### C. James Walden's Testimony

¶16. James Walden also testified at the hearing. James stated that Walden, the defendant, was his brother and that Mary Walden, the victim, was his wife. At the evidentiary hearing, James stated that he met with Powell and discussed what his testimony would be. James testified that Powell told him that Walden would serve five to ten years if Walden accepted the plea offer. According to James, the conversation took place just before the grand jury proceedings. James stated that Powell told him about the alleged offer because James was family.

### D.    Nathaniel Walden's Testimony

¶17.    Walden also testified at the PCR evidentiary hearing.  He stated that Hull told him there was a plea offer for five to ten years, but advised Walden not to take it because he could "beat the case" because it was an accident.  Walden testified that he did not understand the possible sentence he was facing at trial if he lost, and that he believed even if he lost he would only receive five to ten years.  According to Walden, it was not until one of his neighbors in jail explained it to him that he understood he had a life sentence.  Walden stated that if he had been fully advised by Hull, he would have accepted the manslaughter plea.  He denied that he ever told Hull he would not take the plea.  Walden also said that it was Hull who advised him to testify at trial, stating "He just wanted me to get on the stand . . . [to] let me h[a]ng my own self."

¶18.    Following the hearing and a review of the record, the circuit court denied Walden's PCR motion, finding that the evidence that Walden "produced does not show that [his trial counsel's] performance was deficient, but rather a form of trial strategy based upon the facts and evidence at his disposal.  The defense counsel's conduct constituted reasonable professional assistance and his strategy was competent."  Walden now appeals the circuit court's denial of his PCR motion.

## STANDARD OF REVIEW

¶19.    "The standard of review following an evidentiary hearing in a post[]conviction relief case is well settled . . . ."  *Brown v. State*, 168 So. 3d 884, 891 (¶20) (Miss. 2015).  "When

10

reviewing a lower court's decision to deny a petition for post[]conviction relief [an appellate court] will not disturb the trial court's factual findings unless they are found to be clearly erroneous." *Id*. "In making that determination, [the appellate court] must examine the entire record and accept that evidence which supports or reasonably tends to support the findings of fact made below, together with all reasonable inferences which may be drawn therefrom and which favor the lower court's finding of fact." *Id*. at 891-92 (¶20) (internal quotation mark omitted). "That includes deference to the circuit judge as the sole authority for determining credibility of the witnesses." *Id*. (internal quotation mark omitted).

## DISCUSSION

¶20. In his pro se appellate brief, Walden argues that the circuit court erred when it denied his PCR motion in which he claims he received ineffective assistance of counsel during his trial. Specifically, Walden argues he received ineffective assistance of counsel because his trial counsel (1) advised him against taking a plea deal for manslaughter and (2) instead presented an accident defense at trial which was not viable under the facts of the case. However, we first address Walden's contention that collateral estoppel requires a finding of ineffective assistance of counsel.

### I. Collateral-Estoppel Argument

¶21. Walden argues that the doctrine of collateral estoppel prevents the circuit court from finding that Walden's defense counsel was not ineffective for presenting an accident defense at trial. Walden's brief states that "[t]he original trial judge . . . rejected an accidental

11

defense . . . and that ruling was upheld by both state High Courts." He further states that collateral estoppel "prevent[s] the hearing court from reaching a different legal conclusion of the High Courts based on the same set of facts." In his direct appeal, Walden argued that the trial court erred when it denied his accident-defense jury instruction. The trial court's decision to deny the accident instruction was affirmed by this Court in *Walden v. State*, 29 So. 3d 17, 24 (¶22) (Miss. Ct. App. 2008), *cert. denied*, 29 So. 3d 774 (Miss. 2010). Walden concludes that because the trial court's denial of the accident instruction was affirmed on appeal, his trial counsel was ineffective for pursuing the accident theory during trial.

¶22. Indeed, collateral estoppel "protects litigants from the burden of re-litigating an identical issue with the same party or his privy and promotes judicial economy by preventing needless litigation." *Gibson v. Williams, Williams & Montgomery P.A.*, 186 So. 3d 836, 845 (¶21) (Miss. 2016) (internal quotation marks omitted). However, this Court's determination in Walden's direct appeal that the trial court did not err in refusing the accident instruction is not identical to or dispositive of the issue whether Walden's trial counsel was ineffective for presenting an accident defense at trial. This Court's previous determination regarding the jury instruction does not require a finding that Walden's counsel was ineffective, but neither does it foreclose it. Collateral estoppel does not apply here.

¶23. Having addressed Walden's collateral-estoppel argument, we now turn to his arguments underlying his ineffective-assistance claim.

## II. Ineffective Assistance of Counsel

¶24. Walden claims that his counsel advised him to reject a plea offer for manslaughter to instead pursue an accident defense that was inapplicable to his case and, as such, he received ineffective assistance of counsel.

¶25. To succeed on his ineffective-assistance-of-counsel claim, Walden must show that:

> (1) his counsel's performance was deficient, and (2) this deficiency prejudiced his defense. The burden of proof rests with the defendant to prove both prongs. Under *Strickland*,[1] there is a strong presumption that counsel's performance falls within the range of reasonable professional assistance. To overcome this presumption, the defendant must show that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different.

*Renfrow v. State*, 202 So. 3d 633, 636 (¶7) (Miss. Ct. App. 2016).

### A. Alleged Plea Offer

¶26. Walden states that he proved with "uncontradicted evidence that a manslaughter plea was offered for 5-10 years and the shooting into the occupied dwelling [would] be dismissed." He then argues that he received ineffective assistance of counsel because his attorney advised him to reject the plea in favor of an accident defense.

¶27. When Walden appealed the summary dismissal of his initial PCR motion, the supreme court, in response to Walden's plea-bargain argument, stated that the "circuit judge found that Walden could not prove prejudice because the evidence at trial supported his conviction for murder. This conclusion was error." *Walden*, 201 So. 3d 1042 at (¶10). The supreme court then discussed "*Lafler v. Cooper*, [in which] the United States Supreme Court

---

[1] *Strickland v. Washington*, 466 U.S. 668 (1984).

addressed a similar claim . . . explain[ing] that when a defendant claims his counsel provided ineffective assistance by advising the defendant to reject a plea offer, prejudice is established by showing that the outcome of the plea process would have been different with competent advice." *Walden*, 201 So. 3d at 1044-45 (¶11) (quoting *Lafler*, 566 U.S. at 163). Again, the supreme court concluded that "[t]he circuit judge . . . erred by focusing a prejudice analysis on the evidence at trial, rather than the plea bargaining process relevant to this claim of ineffective assistance of counsel." *Id.* at 1046 (¶16). We note that *Lafler* differs from the instant case in that the parties in *Lafler* agreed that counsel was deficient for advising his client to reject the plea. *Lafler*, 566 U.S. at 163. Here, however, the parties do not agree, and the evidence does not establish that there was any plea offer or that Walden's counsel advised him to reject the alleged plea offer.

¶28. Under *Strickland*, to succeed on his ineffective-assistance claim, even as it relates to the alleged plea bargain, Walden "must *first* prove that his counsel was deficient" prior to showing that the deficiency resulted in prejudice. *Crawford v. State*, 218 So. 3d 1142, 1150 (¶18) (Miss. 2016) (emphasis added). This "requires showing that counsel made errors so serious he was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Id*.

¶29. At the evidentiary hearing, both the prosecutor and defense attorney testified that they did not recall that there was any plea offer made. Powell testified that there was no record of an offer in Walden's case file. Hull testified that Walden stated he would not take any

14

plea offer and further testified that if there was any plea offer made, it was turned down. As to credibility, James and Walden were the only witnesses to testify that there was a plea offer, and during the same proceeding, both testified that the other was lying about who shot first at the other.

¶30. As it relates to his claim that Hull advised him to reject a manslaughter plea deal, we cannot find that circuit court's determination that Walden failed to show his attorney's performance was deficient and therefore failed meet the *Strickland* standard required to show ineffective assistance was clearly erroneous, especially given the deference to the circuit court as the sole authority for determining credibility of the witnesses. This issue is without merit.

### B. Accident Defense

¶31. Walden also states Hull was ineffective for pursuing an accident defense. On appeal, Walden states "[it's] obvious that the [circuit court] and the trial attorney do not understand the portion of [Walden's] testimony that prevent an accidental defense." As conveyed by the circuit court:

> Walden argues that [Hull's] performance was deficient due to counsel not thoroughly reviewing the evidence, not informing him of the doctrine of transferred intent when evidence of intent was available, and putting forth an argument of accident/self-defense. Walden states that the statement from Maddie Brown establishing Walden's intent for murder was available to counsel well before trial, [and] that since evidence of intent was available[,] he should have been informed of the theory of transferred intent which would have made it clear that there was a probable chance that he could be found guilty of murder, and that neither accident or self-defense were viable defense theories because Walden armed himself and went to the confrontation.

15

On appeal, Walden interprets the circuit court's denial of his ineffective-assistance claim to say "that the trial attorney was reasonable to reject a manslaughter plea based on an accidental defense."

¶32.     "Counsel's choice of whether or not to call certain witnesses, ask certain questions, or make certain objections falls within the ambit of trial strategy. This Court rarely second guesses trial counsel regarding matters of trial strategy." *Renfrow*, 202 So. 3d at 638 (¶18). Additionally and more specifically, a defendant is entitled to have the jury instructed on his theory of the case, and counsel's decision regarding "[w]hether to request a certain instruction generally is a matter of trial strategy." *McCoy v. State*, 147 So. 3d 333, 347 (¶36) (Miss. 2014).  Such decisions "fall within the ambit of trial strategy and cannot give rise to an ineffective assistance of counsel claim." *Carr v. State*, 873 So. 2d 991, 1003 (¶27) (Miss. 2004) (internal quotation mark omitted).

¶33.     Walden now claims that his trial counsel should not have presented an accident defense because of the doctrine of transferred intent and in light of his sister, Brown's, statement to the sheriff's office that Walden had stated to her his intention to kill his brother. Walden argued that this statement, which evidenced his intent to kill James, implicated the doctrine of transferred intent, and precluded an accident theory of defense, was available to his defense counsel before trial.  However, at the PCR evidentiary hearing, Hull testified that this particular statement was not provided to him in discovery.  Hull stated that it was not until he was cross-examining Brown at trial that he became aware of any evidence that would

16

establish Walden's intent to kill James. Because Hull was unaware of the statement, he testified that the doctrine of transferred intent was not an issue in the case. Hull also testified that he believed what Walden had told him—that James shot at Walden first, and then Walden shot back in self-defense, accidentally shooting Mary. Hull stated he was not aware of any facts that would cause him to believe Walden possessed the intent to shoot James. At trial, when asked if he intended to kill Mary, Walden answered "no." Then, when asked if it was an accident, Walden testified that it "just w[as] an accident." Walden testified that he shot James in self-defense, and that he killed Mary accidentally. He maintained this same testimony at the PCR evidentiary hearing. He also admitted he was not aware of Brown's statement to the sheriff prior to its revelation at trial.

¶34. Following the evidentiary hearing, the trial court found that Hull's performance was not deficient, but rather a form of trial strategy based upon the facts and evidence at his disposal. Again, under our standard of review, we "accept that evidence which supports or reasonably tends to support the findings of fact made below, together with all reasonable inferences which may be drawn therefrom and which favor the lower court's finding of fact . . . includ[ing] deference to the circuit judge as the sole authority for determining credibility of the witnesses." *Brown*, 168 So. 3d at 891 (¶20). Having reviewed the record, including all of the evidence presented at the PCR motion hearing, we cannot say the circuit court's findings are erroneous. Walden did not show that Hull's performance was deficient, and Walden failed to overcome the presumption that Hull's performance fell within the range of

17

reasonable professional assistance.

¶35. Again, that the trial court properly denied the accident-theory jury instruction as determined on direct appeal does not mean Walden's counsel was deficient for pursuing such a strategy. Rather, "having a trial strategy negates an ineffective assistance of counsel claim, regardless of counsel's insufficiencies." *Renfrow*, 202 So. 3d at 636 (¶8). In addition to the deliberate-design murder instruction, the jury was also instructed on culpable-negligence manslaughter and self-defense. Thus, the accident defense, however inapplicable, was not Hull's only strategy, and the jury was instructed on alternate theories. This issue is without merit.

¶36. **AFFIRMED.**

**IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**