# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2025-CA-00043-COA

JACK REHM                                                                APPELLANT

v.

ROBINSON PROPERTY GROUP, LLC D/B/A                       APPELLEES
HORSESHOE TUNICA AND THE SERVICE
COMPANIES, INC.

| | |
|---|---|
| DATE OF JUDGMENT: | 12/12/2024 |
| TRIAL JUDGE: | HON. WILLIAM HUNTER NOWELL |
| COURT FROM WHICH APPEALED: | TUNICA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CHRISTOPHER ETHAN KITTELL |
| ATTORNEYS FOR APPELLEES: | GOODLOE TANKERSLEY LEWIS |
| | CABLE MATTHEW FROST |
| | BEN THOMAS WOODHOUSE |
| | MICHAEL STIRGUS |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 05/19/2026 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**CARLTON, P.J., FOR THE COURT:**

¶1.    On June 5, 2023, Jack Rehm, a Missouri resident, filed a slip-and-fall lawsuit in the Tunica County Circuit Court against The Service Companies Inc. (TSC) and Robinson Property Group LLC (RPG) d/b/a Horseshoe Tunica (collectively at times, Horseshoe Tunica)[1] located in Tunica, Mississippi.  Rehm alleged that he was injured when he slipped and fell in one of Horseshoe Tunica's public restrooms on August 14, 2020.

---

[1] Rehm originally named "Caesars Entertainment Inc. d/b/a Horseshoe Tunica" as a defendant.  Pursuant to an "Agreed Order Substituting Defendant" entered on July 31, 2023, RPG was substituted as a defendant for Caesars Entertainment Inc.

¶2.     Nearly three years before he filed his lawsuit, Rehm had retained counsel who provided written notice of Rehm's potential personal injury claim to RPG (via its third-party administrator), followed by a formal demand for $80,000 sent to RPG on October 6, 2021. Approximately six months later, Rehm filed for Chapter 7 bankruptcy protection, hiring separate bankruptcy counsel to represent him in the bankruptcy proceeding. Rehm did not disclose his prospective personal injury claim at any time in his bankruptcy filings. The bankruptcy matter was discharged and closed on June 23, 2022. Within a year, Rehm filed his personal injury lawsuit against RPG and TSC based upon his August 14, 2020 fall at Horseshoe Tunica.

¶3.     TSC, joined by RPG, moved for summary judgment on judicial estoppel grounds. The circuit court concluded that Rehm's personal injury lawsuit was barred by the doctrine of judicial estoppel because his failure to disclose his claim in his bankruptcy proceeding was not inadvertent. Accordingly, the circuit court granted summary judgment in TSC's and RPG's favor and dismissed Rehm's personal injury lawsuit with prejudice.

¶4.     Rehm appeals, asserting that (1) the circuit court erred in determining that judicial estoppel applied to bar his personal injury claim; or (2) at the very least, there is a question of fact whether Rehm's nondisclosure was inadvertent, thus precluding summary judgment on judicial estoppel grounds. We disagree. For the reasons discussed below, we find that the circuit court did not abuse its discretion in dismissing Rehm's complaint on the basis of judicial estoppel. We therefore affirm the circuit court's judgment.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶5.     As noted, Rehm alleges that on August 14, 2020, he slipped in one of Horseshoe Tunica's restrooms and was injured.  After his fall, Rehm retained Lee Atwill, a Missouri lawyer, to represent him regarding a potential personal injury claim.  On September 25, 2020, Atwill sent a letter of representation to "CCMSI," a third-party administrator that handles claims for RPG.  The September 25, 2020 letter provided that Rehm "slipped/fell in the bathroom due to some water or other substance that was on the floor causing him to slip/fall.  As a result, he injured his right hip and he is currently still treating for his injuries."  In the final paragraph of the letter, Atwill stated, "I look forward to working with you and trying to resolve this claim."

¶6.     Atwill sent a second letter to CCMSI on October 6, 2021, demanding $80,000 to settle Rehm's personal injury claim for his alleged fall on August 14, 2020.  The record contains no response to these communications on behalf of any entity.  No settlement demand was made on Rehm's behalf to TSC.

¶7.     On March 16, 2022, Rehm filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Eastern District of Missouri, retaining bankruptcy attorney Daren Robertson to assist him.  Rehm never disclosed the personal injury claim against Horseshoe Tunica in any of his Chapter 7 bankruptcy filings.  Specifically, Rehm responded "No" to question 33 of Schedule A/B: Property, which required Rehm to inform the bankruptcy court of any "[c]laims against third parties, whether or not you have filed a lawsuit or made a

3

demand for payment." Rehm electronically signed his bankruptcy petition, representing: "I have examined this petition, and I declare under penalty of perjury that the information provided is true and correct." By signing the petition, Rehm further confirmed: "I understand making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571."

¶8. On June 23, 2022, the bankruptcy court discharged Rehm from bankruptcy, and his Chapter 7 bankruptcy case was closed.

¶9. Within a year of his discharge in bankruptcy, Rehm retained Mississippi counsel and filed his personal injury lawsuit against RPG and TSC based upon the injuries he allegedly sustained when he slipped and fell on August 14, 2020, in one of Horseshoe Tunica's restrooms.

¶10. TSC subsequently moved for summary judgment, asserting that Rehm was judicially estopped from recovering on his personal injury claim because he failed to disclose it in his prior bankruptcy proceeding. Attached as exhibits to TSC's motion were Rehm's September 25, 2020 demand letter from Atwill to CCMSI; Rehm's bankruptcy petition and related filings; and the June 23, 2022 "Final Bankruptcy Decree" discharging Rehm from bankruptcy and dismissing his case. RPG joined TSC's motion.

¶11. Rehm opposed TSC's motion, asserting that his failure to disclose his personal injury claim on his bankruptcy schedule was "inadvertent" because he relied "upon the advice of

4

counsel" in doing so. As such, Rehm asserted that judicial estoppel was inappropriate or, "[a]t the very least, there exist[ed] a question of fact as to whether the failure of the bankruptcy petition to include [Rehm's] personal injury claim was inadvertent." Attached to Rehm's opposition were Robertson's affidavit and Rehm's own affidavit. Robertson's affidavit provides that Rehm told him about his August 14, 2020 fall at Horseshoe Tunica and "also informed [him] that no lawsuit had been filed." Robertson further stated that he "reviewed and considered the facts of [] Rehm's personal injury claim and determined that, in [his] [(Robertson's)] opinion, the personal injury claim was not a claim worth pursuing and determined that it should not be included on Schedule A/B of [] Rehm's Chapter 7 bankruptcy petition." In his own affidavit, Rehm similarly stated that he told Robertson about his fall and told Robertson that he "had retain[ed] [] Atwill to represent [him] regarding my personal injury claim but that no lawsuit had been filed at that time." Rehm further stated that "[a]fter being informed of all of the above, [] Robertson advised [him] that the personal injury claim should not be included in the bankruptcy petition."

¶12. TSC filed a reply to Rehm's opposition and attached the October 6, 2021 letter from Atwill to CCMSI submitting an $80,000 "demand package in regard to [Rehm's] injuries he sustained in a slip and fall incident in the bathroom of the Horseshoe Casino on or about August 14, 2020."

¶13. The circuit court held a hearing on TSC's motion on December 11, 2024, and entered its "Order Granting Motion for Summary Judgment" on December 12, 2024. In his order,

5

the circuit judge set forth a timeline beginning August 14, 2020 (the date of Rehm's alleged accident) through June 23, 2022 (the date the bankruptcy court entered its order discharging Rehm's Chapter 7 bankruptcy). The circuit judge then summarized Rehm's argument in opposition to summary judgment, specifically noting the contents of Robertson's affidavit in which Robertson states "that he advised REHM that he need not include his personal injury claim on his bankruptcy petition."

¶14.    The circuit judge then set forth his analysis, beginning by delineating the three elements that "[must] 'be met for judicial estoppel to apply: (1) the position must be clearly inconsistent with one taken during previous litigation; (2) the court must have accepted and relied on the previous position; and (3) the party must not have inadvertently taken the inconsistent position.'" (Quoting *Gibson v. Williams, Williams & Montgomery P.A.*, 186 So. 3d 836, 846 (¶25) (Miss. 2016)).

¶15.    The circuit judge found that "[Rehm] admits that the first two elements required to prevail on a judicial estoppel claim are met . . . [but] [t]he parties dispute the third element, that being whether [Rehm] inadvertently took the inconsistent position."  On this point, the circuit judge found "that [Rehm] did *not* inadvertently take the inconsistent position."  In reaching this finding, the circuit judge found that "there is a record of REHM retaining an attorney to pursue his tort claim *prior to* his bankruptcy.  Furthermore, there is also a formal notice of claim and formal demand to Defendants *prior to* filing bankruptcy."  Thus, the circuit judge found that "REHM began pursuing his slip-and-fall tort claim through retained

counsel prior to filing bankruptcy, continued pursuing his claim throughout the bankruptcy, and filed a lawsuit against Defendants *after* the bankruptcy was discharged." On these undisputed facts, the circuit judge concluded "that REHM's nondisclosure of potential monetary damages against the Defendants was not inadvertent and, therefore, warrants application of judicial estoppel."

¶16. Rehm appealed.

## STANDARD OF REVIEW

¶17. Although ordinarily "[w]e review a [circuit] court's grant or denial of a motion for summary judgment de novo," *Jones v. Alcorn State Univ.*, 337 So. 3d 1062, 1066 (¶10) (Miss. 2022), "[t]he standard of review when considering a trial court's application of judicial estoppel is abuse of discretion." *Id.*; *see id.* at 1067 (¶13) (recognizing that "the application of judicial estoppel is a discretionary call that must be reviewed for abuse of discretion"); *id.* at (¶14) ("Although we commonly state that we review the circuit court's decision to grant summary judgment de novo, a trial court's imposition of judicial estoppel is subject to review under an abuse of discretion standard."); *see also, e.g.*, *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 384 (5th Cir. 2008) (recognizing that "because judicial estoppel is an equitable doctrine, and the decision whether to invoke it is within the court's discretion, we review for abuse of discretion the lower court's decision to invoke it" (internal quotation marks omitted)). We address the application of this standard of review in further detail below.

7

**DISCUSSION**

## I.    Judicial Estoppel

¶18.    When a party seeks to recover on a claim that he failed to disclose in a prior bankruptcy proceeding, judicial estoppel will bar that claim when three elements are met: "(1) the position is inconsistent with one previously taken during litigation, (2) a court accepted the previous position, and (3) the party did not inadvertently take the inconsistent positions." *Clark v. Neese*, 131 So. 3d 556, 560 (¶16) (Miss. 2013); *accord Saunders v. Nat'l Collegiate Athletic Ass'n*, 352 So. 3d 618, 624 (¶24) (Miss. 2022). Judicial estoppel is an equitable concept and "operates to protect the integrity of the judicial system." *Adams v. Graceland Care Ctr. of Oxford LLC*, 208 So. 3d 575, 580 (¶14) (Miss. 2017). For the reasons addressed below, we find that the circuit judge did not abuse his discretion in concluding that Rehm's personal injury lawsuit against TSC and RPG was barred by the doctrine of judicial estoppel.

¶19.    As the circuit judge found, the first two elements of judicial estoppel are not at issue. At the summary judgment hearing, Rehm's counsel told the circuit judge that Rehm "[did not] dispute that the first two elements of judicial estoppel are met. [Rehm] did make inconsistent statements between his bankruptcy petition and filing this lawsuit and, also, the bankruptcy court did accept his inconsistent position in the bankruptcy filing."

¶20.    Rehm's bankruptcy filings (Exhibit B to TSC's motion) show that Rehm did not include his personal injury claim in his sworn bankruptcy schedules or ever amend his

bankruptcy schedules to notify the bankruptcy court of his claim before his bankruptcy case was closed. The first element is met. *See Kirk v. Pope*, 973 So. 2d 981, 991 (¶33) (Miss. 2007) (recognizing that "Kirk's failure to list the lawsuit [in his bankruptcy schedules] represented that no such suit existed and [was] inconsistent with his subsequent pursuit of the claim").

¶21.  The second element is likewise met:  The bankruptcy court accepted Rehm's representations that he had no claims against third parties when it entered an order discharging Rehm from bankruptcy.[2]  *See Saunders*, 352 So. 3d at 624 (¶24); *Rogers v. Gulfside Casino P'ship*, 206 So. 3d 1274, 1279 (¶10) (Miss. Ct. App. 2016) ("[W]hen the bankruptcy court entered an order discharging Rogers and her husband from bankruptcy, the court effectively accepted her representation that she had made a full and complete disclosure of her assets.").

¶22.  Rehm, however, asserts that the third element of judicial estoppel is not met in this case because he inadvertently took these inconsistent positions in reliance on the advice of his bankruptcy lawyer.  "Generally, a debtor's nondisclosure is inadvertent only when the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." *Saunders*, 352 So. 3d at 624 (¶25) (internal quotation marks omitted); *Adams*, 208 So. 3d at 580 (¶14); *Kirk*, 973 So. 2d at 991 (¶35).  "[I]t is [Rehm's] burden to prove that

---

[2] The June 23, 2022 Final Bankruptcy Decree was attached to TSC's motion as Exhibit C.

9

[his] non[]disclosure was inadvertent." *Rogers*, 206 So. 3d at 1280 (¶11); *Jones*, 337 So. 3d at 1072 (¶36) (affirming circuit court's granting summary judgment based on judicial estoppel where the plaintiff Jones "failed to meet his burden of showing his contradictory representations were inadvertent, failed to identify an abuse of discretion in the circuit court's decision, and[, thus,] failed to set forth a genuine dispute of material fact"). As we address below, we find no abuse of discretion in the circuit court's determination that Rehm did not inadvertently take inconsistent positions in this case.

¶23. With respect to the "lack of knowledge" factor, "[t]he question is not whether [Rehm] subjectively knew at the time of his bankruptcy that he had a legal duty to disclose the claim in [his] bankruptcy proceeding." *Jackson v. Harris*, 303 So. 3d 454, 458-59 (¶15) (Miss. Ct. App. 2020). Instead, Rehm "is deemed to have had knowledge of [his] claim so long as [he] was aware of the facts giving rise to it." *Id.* at 459 (¶15) (internal quotation marks omitted).

¶24. Like the circuit court, we find that Rehm had the requisite knowledge of his claim here. As the circuit court pointed out, this case involves a slip-and-fall tort claim. In *Saunders*, the supreme court expressly noted that "[c]ommon sense tells us that in obvious cases, *like a . . . slip-and-fall tort claim*, knowledge of the facts giving rise to a claim may very well be sufficient for a layperson to have knowledge of a potential tort claim." *Saunders*, 352 So. 3d at 625 (¶29) (emphasis added). Further, the record shows that following his August 14, 2020 fall, Rehm retained Atwill to represent him to pursue his personal injury claim against Horseshoe Tunica. Atwill sent a formal notice of Rehm's claim

10

to CCMSI on September 25, 2020. Then, on October 6, 2021, Rehm's attorney sent a formal demand to CCMSI in the amount of $80,000 for injuries Rehm allegedly sustained in his fall. After actively pursuing his personal injury claim for nearly a year, Rehm filed for Chapter 7 bankruptcy less than six months later. Rehm had the requisite "knowledge of his potential tort claim." *Id.*

¶25. Regarding Rehm's motive to conceal his personal injury claim, we recognize that "[the circuit] court must look at all the facts and circumstances . . . in determining if the debtor's nondisclosure was purposeful," and not simply infer purposeful nondisclosure based on the fact that a claim was not disclosed. *Id.* at 626 (¶29). Even so, the circuit court may certainly take into consideration a debtor's motivation not to disclose a particular asset. After all, if Rehm "does not disclose his claim, he can keep the net proceeds of any settlement or judgment rather than pay his debts to creditors who are not repaid in full under [the] terms of [his] bankruptcy plan." *Jones*, 337 So. 3d at 1068 (¶19) (recognizing "the broader harm of [a debtor] manipulating our system of justice for private gain" where a debtor does not disclose a claim in bankruptcy); *Rogers*, 206 So. 3d at 1280 (¶12) (recognizing a debtor's "incentive to conceal [his] claims from creditors" in that the debtor may then keep any proceeds from an undisclosed claim). Like the circuit court, we take into account all the "facts and circumstances" in this case as contained in the record, including the December 11, 2024 summary judgment hearing transcript.

¶26. Rehm relies on his own affidavit and Robertson's affidavit to support his argument

11

that he inadvertently failed to disclose his personal injury claim because he relied on Robertson's advice that it need not be disclosed.[3] We find that these affidavits, however, show no more than the fact that Rehm blindly followed the advice of the lawyer he engaged for a *bankruptcy* case (Robertson) regarding the viability of Rehm's *personal injury* claim for which he had retained separate counsel (Atwill). On that basis, Rehm failed to notify the bankruptcy court of his personal injury claim.

¶27. That is, Rehm failed to include his personal injury claim in his bankruptcy schedules based on his *bankruptcy* lawyer's determination that "in [*his*] opinion, [Rehm's] . . . personal injury claim was not a claim worth pursuing and . . . it should not be included on Schedule A/B of [] Rehm's Chapter 7 bankruptcy petition." Particularly relevant is that despite the fact that Rehm stated in his affidavit that he told Robertson that he "had retain[ed] [] Atwill to represent [him] regarding [his] personal injury claim," neither Robertson's affidavit, nor Rehm's affidavit, indicates that Atwill—or any other lawyer—was consulted regarding the viability of Rehm's personal injury claim that he already had Atwill pursuing well over a year before Rehm sought bankruptcy. This is so even though the purported nonviability of Rehm's claim was the very reason Robertson advised Rehm that the claim need not be included in his bankruptcy filings.

---

[3] Rehm asserts that the circuit judge did not consider his affidavit or Robertson's affidavit when he determined Rehm's personal injury lawsuit was barred by judicial estoppel. As we address below, the record is clear that the circuit judge *did* consider these affidavits, along with the other filings, exhibits, and argument of counsel before him in dismissing Rehm's lawsuit on judicial estoppel grounds.

12

¶28. We find that this omission is key: Within a year following his discharge in bankruptcy, Rehm engaged Mississippi counsel who filed a personal injury complaint on Rehm's behalf against TSC and RPG based on the same slip-and-fall claim that Rehm pursued *before* filing for bankruptcy but never disclosed to the bankruptcy court. Under these circumstances, we find no abuse of discretion in the circuit court's determining that Rehm had motive to conceal his claim and that his nondisclosure of that claim was not inadvertent. *See Kirk*, 973 So. 2d at 992 (¶¶37-38) (determining that the debtor's "less than candid" description of the status of his breach-of-contract lawsuit to his bankruptcy lawyer, resulting in his bankruptcy lawyer failing to disclose it on debtor's bankruptcy schedules, constituted "sufficient evidence for the circuit court to conclude that [the debtor's] non[]disclosure was not inadvertent").

¶29. Rehm also relies on two supreme court cases that he asserts support his reliance-on-advice-of-counsel argument. *See Gibson*,186 So. 3d at 847 (¶¶26-27); *Miss. Power & Light Co. v. Cook*, 832 So. 2d 474, 481-82 (¶¶20-22) (Miss. 2002). The dissent similarly relies on *Gibson* in asserting that granting summary judgment in TSC's and RPG's favor was improper in this case. We find that both cases are entirely distinguishable from the circumstances before us and are inapplicable here.

¶30. In *Gibson*, Bobby Gibson filed a legal malpractice lawsuit against his attorney and the attorney's law firm, alleging the attorney wrongfully handled the estate of Gibson's late wife. *Gibson*, 186 So. 3d at 840 (¶1). Gibson alleged that the attorney provided him with bad

advice and convinced him to sign various joinders and petitions throughout the estate's administration without fully informing him of the implications of doing so. *Id.* at 847 (¶27).

¶31. The trial court granted summary judgment in the attorney's favor and dismissed Gibson's lawsuit against him. *Id.* at 842-43 (¶23). The supreme court reversed and remanded, rejecting the attorney's argument that by signing the joinders and petitions, Gibson took a prior inconsistent position in the chancery court, and thus was judicially estopped from pursuing his legal malpractice claim. *Id.* at 846-47 (¶¶26-30). The supreme court found that under these circumstances, "[Gibson,] at the very least, . . . inadvertently took these inconsistent positions" based upon his own attorney's advice as alleged in the legal malpractice lawsuit against him. *Id.* at 847 (¶28) (emphasis omitted).

¶32. Thus, *in this context*, the supreme court concluded that judicial estoppel would not preclude Gibson from maintaining his legal malpractice action against the very lawyer who convinced and advised him to sign the joinders and petitions in the chancery court. *Id.* at (¶¶27-28). As applied here, *Gibson* merely stands for the proposition that judicial estoppel would not preclude Rehm from filing a legal malpractice complaint against Robertson (his bankruptcy lawyer) for providing faulty advice. We find no Mississippi case, however, applying *Gibson*'s ruling in any context other than the specific legal malpractice context as addressed in that case. For all the reasons we have already addressed above, we likewise decline to do so here.

¶33. We further observe that in *Gibson*, the supreme court held that "judicial estoppel

cannot apply because it cannot be said that [Gibson] benefitted by taking these prior positions—in fact, quite the contrary[,]" considering the various losses Gibson sustained that he alleged were the result of his attorney's advice. *Id.* at (¶29). No analogous circumstances are present here.

¶34. We also find that *Cook* is inapplicable. Indeed, the *Cook* decision does not address the preclusive effect of judicial estoppel at all. Rather, in that case, Kenneth Cook filed a lawsuit against his employer, Mississippi Power & Light Company (MP&L), for prematurely halting his workers' compensation benefits allegedly in bad faith. *Cook*, 832 So. 2d at 478 (¶4). Cook had initially failed to include his potential bad faith claim against MP&L in his pre-suit bankruptcy filings. *Id.* at 481 (¶20). Before a trial on Cook's bad faith claim, however, Cook amended his bankruptcy filings to include his bad faith claim after MP&L moved to have the bankruptcy proceedings reopened. *Id. Cook* is not analogous to Rehm's case for this reason alone, as no such action took place here.

¶35. In any event, the issue addressed in *Cook* is not even remotely akin to the circumstances in this case. At the trial on Cook's bad faith claim, "[t]he circuit court held that the bankruptcy documents could be used for *impeachment*, but the entire bankruptcy file could not be admitted into evidence because it might confuse the jury." *Id.* at (¶21) (emphasis added). The supreme court found no error in this ruling, noting that the jury could properly "take this [information] into consideration in determining the credibility of Cook." *Id.* In the case before us, whether Rehm's prior inconsistent representations in bankruptcy court

15

may be used for impeachment purposes at a trial on his personal injury claim is not at issue. The supreme court's ruling in *Cook* is simply inapplicable.

¶36. In summary, for the reasons we have set forth above, we find that the circuit court did not abuse its discretion when it found that all three requirements of judicial estoppel were satisfied and, accordingly, dismissed Rehm's complaint with prejudice. As such, we find Rehm's assignment of error on this point without merit.

## II. Genuine Issue of Material Fact

¶37. Rehm asserts that "[a]t the very least, there is a question of fact for the jury to decide as to whether [his] non[]disclosure was inadvertent."[4] Rehm's assertion on this point,

---

[4] As we noted above, Rehm asserts in his appellant's brief that he "presented evidence in the form of two sworn affidavits that he acted inadvertently" and that the circuit judge erred when he "did not even consider" these affidavits. Appellant Br. at 10; Reply Br. at 7-8. Rehm's assertion is unsupported by the record. Upon our review, we find that the record is clear that the circuit court *did* consider these affidavits in determining that judicial estoppel applied in this case.

Specifically, Rehm attached Robertson's affidavit and his own affidavit to his opposition to TSC's summary judgment motion. In his opposition, Rehm addressed the contents of these affidavits in support of his argument that he inadvertently failed to disclose his personal injury claim. Further, during the December 11, 2024 hearing on TSC's motion, Rehm's lawyer repeatedly referred to Robertson's affidavit in arguing that "Rehm was honest throughout the whole [bankruptcy] process." Rehm's lawyer told the court that according to Robertson's affidavit, "Rehm did tell him [(Robertson)] about his fall and his injury and that the—the lawsuit had not been filed yet . . . . [Robertson], as he's testified in his affidavit, considered [this information] and advised [] Rehm that [his personal injury claim] did not need to be included in his bankruptcy filing."

All this information was before the circuit judge. The circuit judge summarized the contents of the Robertson affidavit in his opinion. The circuit judge's order also expressly provides that he reached his decision granting summary judgment on the judicial estoppel issue after "[h]aving considered Defendants' motion, Plaintiff's response [(including Robertson's and Rehm's affidavits, attached as exhibits to that response)], Defendants' reply

16

however, ignores the applicable standard of review in the judicial estoppel context.  As we have already stated above, "[t]he standard of review when considering a trial court's application of judicial estoppel is abuse of discretion."  *Jones*, 337 So. 3d at 1066 (¶10).

¶38.    Particularly relevant here, the supreme court recognized in *Jones* that when a "circuit court's grant of summary judgment was based entirely on its ruling on the issue of judicial estoppel[,] . . . [then] the only question we must address is whether the circuit court abused its discretion by imposing the doctrine of judicial estoppel."  *Id.* at 1067 (¶14) (quoting *Rogers*, 206 So. 3d at 1279 (¶9)).  "[I]f the court's imposition of judicial estoppel was not an abuse of discretion, it necessarily follows that its grant of summary judgment was proper."  *Id.*; *Adams*, 208 So. 3d at 582 (¶23); *Smith v. Baker*, 321 So. 3d 575, 584 (¶26) (Miss. Ct. App. 2021).

¶39.    Here, as in *Jones*, the circuit court's order "was based entirely on the issue of judicial estoppel."  *Id.*  As such, "[o]ur inquiry is limited to whether the [circuit] judge abused his discretion[.]"  *Adams*, 208 So. 3d at 580 (¶13).  In this regard, "we may not rule on whether

_____

to Plaintiff's response and sur-reply, arguments of counsel on December 11, 2024, and relevant caselaw."
        As the record reflects, and as expressly stated in the circuit judge's order, the circuit judge considered all the information before him in determining that judicial estoppel applied to bar Rehm's personal injury claim against TSC and RPG.  We therefore reject Rehm's assertion to the contrary.  *See, e.g.*, *Chantey Music Pub. Inc. v. Malaco Inc.*, 915 So. 2d 1052, 1055 n.2 (Miss. 2005) (rejecting plaintiff's contention that the trial judge did not consider certain filings in rendering his decision and noting that nothing in the record even suggested that the trial judge "did not do exactly as he announced in open court, and that was that he would 'accept all filings you've made and in terms of any ruling that the Court makes, the Court will consider all documents you've filed'").

he was 'right' or 'wrong' in our view. And, unless the [circuit] court based its decision on an erroneous review of law, [we are] not authorized to reverse for an abuse of discretion unless we find it was arbitrary and clearly erroneous." *Id.* (internal quotation marks omitted).

¶40.    We find that the circuit judge correctly identified and applied the three requisite elements of judicial estoppel to bar Rehm's personal injury lawsuit against TSC and RPG in this case.  In the circuit court and on appeal, Rehm does not dispute that the first two elements of judicial estoppel are met.  Indeed, the record is clear that Rehm had knowledge of his personal injury claim, and the bankruptcy court accepted that position when it granted Rehm a discharge in bankruptcy.

¶41.    Regarding the third element, the undisputed facts show that Rehm pursued his personal injury claim before filing for bankruptcy.  He then engaged separate bankruptcy counsel and filed for Chapter 7 bankruptcy.  In choosing not to disclose his personal injury claim, Rehm relied on his *bankruptcy* lawyer's opinion that his *personal injury* claim "was not a claim worth pursuing" and, thus, did not need to be disclosed in Rehm's bankruptcy filings.  Yet within a year following his bankruptcy discharge, Rehm engaged Mississippi counsel and resumed pursuing that very same personal injury claim—the same claim that Rehm had pursued before filing for bankruptcy.

¶42.    On these facts and circumstances, we find nothing "arbitrary" or "clearly erroneous" in the circuit judge's determination that Rehm did not inadvertently fail to disclose his personal injury claim in his bankruptcy proceeding.  Nor do we find anything in the supreme

18

court's decisions in *Gibson* or *Cook* that changes our analysis.

## CONCLUSION

¶43.    For all the reasons we have discussed, we find that the circuit judge did not abuse his discretion in concluding that judicial estoppel bars Rehm's personal injury lawsuit against TSC and RPG.   Precedent therefore requires that we affirm that ruling.  *Jones*, 337 So. 3d at 1066 (¶10); *Adams*, 208 So. 3d at 580 (¶13); *Smith*, 321 So. 3d at 584 (¶26).  That being so, "it necessarily follows that [the circuit judge's] grant of summary judgment was proper." *Jones*, 337 So. 3d at 1067 (¶14) (quoting *Rogers*, 206 So. 3d at 1279 (¶9)); *Adams*, 208 So. 3d at 582 (¶23); *Smith*, 321 So. 3d at 584 (¶26).  Accordingly, we affirm.

¶44.    **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., LAWRENCE, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.  McDONALD, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.  WESTBROOKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD AND McCARTY, JJ.**

**WESTBROOKS, J., DISSENTING:**

¶45.    I respectfully dissent. I would find, at minimum, that questions of fact preclude the grant of summary judgment to the Defendants. "We review the grant or denial of a motion for summary judgment de novo, viewing the evidence in the light most favorable to the party against whom the motion has been made." *Lefler v. Wasson*, 295 So. 3d 1007, 1009 (¶7) (Miss. Ct. App. 2020) (quoting *Karpinsky v. Am. Nat'l Ins. Co.*, 109 So. 3d 84, 88 (¶9) (Miss. 2013)). Whether a party "acted inadvertently is a question of fact," and when a defendant presents evidence that a claimant may not have acted inadvertently, "disputes over facts that

might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Jourdan River Ests. LLC v. Favre*, 278 So. 3d 1135, 1154 (¶¶75, 77) (Miss. 2019) (quoting *Sherrod v. U.S. Fid. & Guar. Co.*, 518 So. 2d 640, 642 (Miss. 1987)). The facts and circumstances of nondisclosure must be considered, and a claim cannot be judicially estopped based on the mere failure to disclose a claim to a bankruptcy court. *Saunders v. Nat'l Collegiate Athletic Ass'n*, 352 So. 3d 618, 625 (¶29) (Miss. 2022).

¶46. Good faith reliance on an attorney's advice is a ground for a finding of inadvertence. In *Gibson*, our Supreme Court found that a party inadvertently took an inconsistent position when relying on the advice of an attorney. *Gibson v. Williams, Williams & Montgomery P.A.*, 186 So. 3d 836, 847 (¶30) (Miss. 2016). The estate attorney failed to disclose to Gibson, a beneficiary of his late wife's will, that the deceased's conservatorship account had been depleted by more than a quarter of a million dollars to only approximately $4,000. *Id.* at 841 (¶4). The attorney also failed to inform Gibson that he had the right to renounce the will, which would have led to him receiving a larger share of the estate. *Id.* at 847 (¶28). From this uninformed position, Gibson joined the probate petition as recommended by the estate attorney. *Id.* at 841 (¶7). Gibson subsequently filed a malpractice action against the estate attorney. *Id.*

¶47. The Supreme Court held that the malpractice action was not precluded by judicial estoppel. *Id.* at 847 (¶30). The opinion states:

> [J]udicial estoppel applies only when the inconsistent position was not taken inadvertently. If [the client's] assertions prove to be true, . . . then he [took the

20

inconsistent position] either because he had received bad advice from his attorney, or because his attorney had breached a fiduciary duty to him by failing to fully inform him of the implications of [taking the inconsistent position].

*Id.* at (¶27).

¶48. Here, in support of his opposition to the Defendants' motion for summary judgment, Rehm submitted an affidavit from his bankruptcy attorney in which the attorney represented that he advised Rehm to not list the claim on his bankruptcy forms. The attorney's affidavit states in relevant part:

> I reviewed and considered the facts of Mr. Rehm's personal injury claim and determined that, in my opinion, the personal injury claim was not a claim worth pursuing and determined that it should not be included on Schedule AB of Mr. Rehm's Chapter 7 bankruptcy petition.
>
> I advised Mr. Rehm that his personal injury claim should not be included on Schedule A/B of his Chapter 7 bankruptcy petition.

¶49. Viewing the evidence in the light most favorable to Rehm, I would find that the grant of summary judgment to the Defendants was improper. Rehm was fully transparent with his bankruptcy attorney about his claim against the Defendants. He then relied on the attorney's advice for how to proceed. "Judicial estoppel is designed to protect the judicial system and applies where '*intentional* self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.'" *Kirk v. Pope*, 973 So. 2d 981, 991 (¶31) (Miss. 2007) (emphasis added) (quoting *Browning Mfg. v. Mims* (*In re Coastal Plains Inc.*), 179 F.3d 197, 205 (5th Cir. 1999)) (emphasis added). The record available to us on appeal does not indicate that Rehm acted in bad faith or with the intent to exploit the

21

judicial system; instead, the appearance is that he acted in good faith on the advice of his attorney, similar to the client in *Gibson*. And importantly, the question of whether a claimant's failure to disclose a claim in bankruptcy was a willfully false statement supporting judicial estoppel is a credibility question that belongs in the purview of the jury. *See Miss. Power & Light Co. v. Cook*, 832 So. 2d 474, 482 (¶22) (Miss. 2002).

¶50. Because I would reverse the grant of summary judgment, I respectfully dissent.

**McDONALD AND McCARTY, JJ., JOIN THIS OPINION.**